## STATE v. WILMA POAGUE.[1]

October 28, 1955.

No. 36,676.

*Peterson, Karigan & Schneider,* for appellant.

*Miles Lord,* Attorney General, *Charles A. Sawyer,* City Attorney, and *Leo P. McHale,* Assistant City Attorney, for respondent.

DELL, CHIEF JUSTICE.

Defendant was convicted in the municipal court of the city of Minneapolis of violating an ordinance of said city enacted for the

[1]Reported in 72 N. W. (2d) 620.

purpose of restraining and punishing prostitutes.[2] She appeals from the judgment of conviction and also from the order denying her a new trial.

Defendant is a married woman, 40 years of age, and the mother of three young children. For five years prior to the trial she was employed as a bookkeeper at a beauty shop in downtown Minneapolis. Besides working as a bookkeeper, after 6 p. m. she operated a "Date and Escort Club" on the second floor of the building located at 825 Hennepin Avenue. The business of the club, according to her testimony, was to register the names of men and women, make introductions, and match dates. Patrons were charged a registration fee of $10.

On January 6, 1955, at about 6:30 p. m. James Jahr, an officer of the Morals Squad of the city police force, called upon the defendant at her club. He was a stranger to her, and his call was because of a complaint concerning the club received earlier that same day. In an effort to ascertain whether defendant was violating the law, Jahr misrepresented the true facts and told her that he would only be in the city for a few hours since he had to leave by train that night at 9:30 and he indicated that he would like to meet a girl. Defendant placed two or three calls in an effort to procure one for him but to no avail.

She then said, so Jahr testified, "Well, about the only thing I can suggest now is that I can take care of you myself. * * * I could lock the door and the phones could be busy for a while * * * but

---

[2] Minneapolis City Charter and Ordinances (Perm. ed.) 37:25 reads in part:

"PROSTITUTES

"An ordinance to restrain and punish prostitutes.

"Section 1. The *offering* or subjecting of her body, by any female over the age of ten (10) years, within the City of Minneapolis, to or for the purpose of concubinage or *to or for indiscriminate sexual intercourse with men,* whether the same be for hire or not, constitutes such female a common prostitute, and any such person so offending, shall, upon conviction thereof before the Municipal Court of said city be punished by a fine not exceeding one hundred dollars ($100) or by imprisonment in the county jail not exceeding ninety (90) days." (Italics supplied.)

it is going to cost you $30." Jahr consented and gave her three $10 bills, the serial numbers of which had been previously recorded by another officer. Defendant placed the bills in her desk drawer and locked the interoffice door. The parties then proceeded into an adjoining room where defendant, so Jahr said, took from her purse a carton of prophylactics and stated "I hope you don't mind but you will have to use this," to which he agreed. Both the defendant and Jahr then partially undressed. It is clear from the record, not only from the officer's testimony but from that of the defendant as well, that the defendant was at that time preparing to engage in an act of sexual intercourse with Jahr. He then showed her his badge and placed her under arrest.

■ Defendant contends that the evidence presented did not justify her conviction. The first question presented for our consideration is the meaning, legal force, and effect of the phrase, "indiscriminate sexual intercourse with men," as used in the ordinance. The wording of the ordinance follows the generally recognized definition of prostitution.[3] The word "indiscriminate" is not defined by the ordinance. We must, therefore, look to its common and accepted meaning.[4]

Defendant argues that "indiscriminate" requires a showing that she offered to, or actually did engage in, illicit intercourse with more than one man. Thus, she contends that proof of an offer to have illicit intercourse with only one man, as in this case, is not sufficient to justify her conviction as a prostitute. Defendant cites State v. Marsh, 158 Minn. 111, 196 N. W. 930, in support of her

[3]Prostitution is the practice of a female offering her body to an indiscriminate intercourse with men, usually for hire. 73 C. J. S., Prostitution, § 1; State v. Thuna, 59 Wash. 689, 109 P. 331, affirmed on reargument, 111 P. 768; People v. Phillips, 70 Cal. App. (2d) 449, 160 P. (2d) 872.

[4]Webster's New International Dictionary (2 ed.) (1950) defines "indiscriminate" as follows: "Not discriminate; wanting, or not making, discrimination; undistinguishing. * * * That is INDISCRIMINATE which lacks, or shows the absence of, selection or discrimination." See State v. Marsh, 158 Minn. 111, 113, 196 N. W. 930, 931, where the court said: "It is elementary that the legislature is considered to have used common words in their ordinary meaning."

contention. The case does not stand for the proposition suggested by the defendant. That was a case of abduction in which the defendant was indicted for abducting a female under the age of 18 years "for the purpose of prostitution." This court, in holding that the evidence was insufficient to show that the girl was taken for the purpose of prostitution, said (158 Minn. 112, 196 N. W. 930) "There was no proof that the girl was taken for any purpose other than the satisfaction of defendant's lust." The court inferred, however, that if the girl had been motivated by pecuniary gain rather than affection she would have been considered a prostitute even though she engaged in illicit intercourse with but one man.[5]

Conviction as a "common prostitute" places a social stigma on a person that is difficult, if not impossible, to erase. Thus, the evidence should be carefully scrutinized before convicting a woman of such a charge. That does not mean, however, that additional unnecessary impediments should be placed in the way of law enforcement officials. There is no valid reason why the indiscriminate conduct required by the ordinance may not be inferred from the accused's acts, conduct, and utterances, together with the surrounding circumstances. To construe the language of the ordinance as the defendant suggests would thwart the intent and purpose of the municipality in enacting it.[6]

We conclude that whether a woman is a common prostitute does not depend alone upon the number of persons with whom she had illicit intercourse but rather may be judged from all the surrounding circumstances, including her acts, conduct, and utterances in determining whether she was lacking in discrimination within the commonly accepted meaning of that word in submitting to, or offering her body for, illicit sexual intercourse.[7]

---

[5]"However illicit the relation may be, so long as a woman remains faithful to one lover *and is motivated only by affection or passion and not pecuniary gain,* she is not, in the language of ordinary folk, termed a prostitute." (Italics supplied.)  State v. Marsh, 158 Minn. 111, 114, 196 N. W. 930, 931.

[6]Bates v. State, 27 Ohio App. 391, 161 N. E. 344.

[7]State v. Rice, 56 Iowa 431, 9 N. W. 343; State v. Clark, 78 Iowa 492, 43 N. W. 273; People v. Berger, 169 N. Y. S. 319, 321: "That the defendant

442

Here, the defendant was a complete stranger to officer Jahr. Nevertheless, she was not only willing but, according to Jahr's testimony, suggested that she have sexual intercourse with him for the price of $30. Such conduct indicates a total lack of selection or discrimination other than on a purely pecuniary or economic basis. The trial court so found and was justified in concluding that the acceptance of the monetary consideration under the *circumstances* of this case carried a sufficient implication of defendant's lack of discrimination in offering to engage in sexual intercourse and that it established such a definition of character as to sustain the conviction despite proof of only one actual offer.[8] This court is bound by the trial court's findings on fact issues where such findings have sufficient support in the evidence.[9]

Municipal ordinances are not criminal statutes and violations thereof are not crimes nor governed by the rules of criminal law except in certain exceptional particulars not present here. Nor is it necessary that violations of an ordinance be proved beyond a reason-

is a common prostitute or nightwalker may be established in a variety of ways. * * * It may also be proved by competent testimony as to what took place at the time, as by proof of conversation in which the defendant took part, or of conduct from which it appears that she was a common prostitute or nightwalker"; State v. Thuna, 59 Wash. 689, 690, 109 P. 331: "Whether a woman is a common prostitute is a question of fact which does not depend alone upon the number of persons with whom she has had illicit intercourse, * * *. Her avocation may be known or inferred from the manner in which she plies it"; Wilson v. State, 17 Ala. App. 307, 84 So. 783; Curran v. United States (D. C. Mun. App.) 52 A. (2d) 121; see Bates v. State, 27 Ohio App. 391, 161 N. E. 344, where the court held that the word "indiscriminate" did not require a showing of illicit relations with persons other than prosecuting witness.

[8]In State v. Burke, 187 Minn. 336, 245 N. W. 153, arising under the same ordinance, this court, in a per curiam opinion, based its decision on two illicit solicitations in finding the degree of indiscrimination necessary to sustain a conviction under the ordinance. The court, however, did not lay down a rule requiring that at least two different illicit acts be shown. The opinion was based solely upon the circumstances of that particular case.

[9]Walsh v. Dahl, 195 Minn. 36, 261 N. W. 476.

able doubt.[10] We conclude that the evidence was amply sufficient to sustain the conviction.

■ Defendant further contends that, if any offense was committed, she was entrapped into its commission. The generally recognized principle of entrapment as a defense is well stated in the case of Newman v. United States (4 Cir.) 299 F. 128, 131, as follows:

"* * * It is well settled that decoys may be used to entrap criminals, *and to present opportunity to one intending or willing to commit crime.* But decoys are not permissible to ensnare the innocent and law-abiding into the commission of crime. When the criminal design originates, not with the accused, but is conceived in the mind of the government officers, and the accused is by persuasion, deceitful representation, or inducement lured into the commission of a criminal act, the government is estopped by sound public policy from prosecution therefor." (Italics supplied.)

Entrapment exists where it appears that officers of the law lured the accused into committing an offense which he otherwise would not have committed and had no intention of committing.[11] However, the general rule is that it is not unlawful to provide a person with the opportunity to voluntarily and deliberately do what there was reason to believe he would do if afforded the opportunity.[12]

From the evidence it could be found that the defendant was willing to commit the offense of prostitution and that the police arrangements simply afforded her an opportunity to do so. True, the officer misrepresented the facts in an effort to ascertain whether the defendant was violating the law, but it is no defense that the "facilities" for the commission of an offense were purposely placed at the defend-

[10]State v. Jamieson, 211 Minn. 262, 300 N. W. 809.

[11]Sorrells v. United States, 287 U. S. 435, 53 S. Ct. 210, 77 L. ed. 413; State v. McCornish, 59 Utah 58, 201 P. 637.

[12]State v. Boylan, 158 Minn. 263, 197 N. W. 281; People v. Smith, 296 Mich. 176, 295 N. W. 605; State v. Gutilla, 94 Ohio App. 469, 116 N. E. (2d) 208; City of Duluth v. Verdi, 186 Minn. 393, 243 N. W. 394.

ant's disposal.[13] Artifice and strategem may be employed to catch those engaged in criminal enterprises. A trap may be set.[14] The trial court found against the defendant on the issue of entrapment and the issue being one of fact, the finding must be sustained.

Affirmed.

[13]Nelson v. City of Roanoke, 24 Ala. App. 277, 135 So. 312.

[14]Sorrells v. United States, 287 U. S. 435, 53 S. Ct. 210, 77 L. ed. 413; State v. Boylan, 158 Minn. 263, 197 N. W. 281; 5 Dunnell, Dig. (3 ed.) § 2448b.