STATE of Minnesota, Respondent,

v.

Yong Cha KETTER, Appellant.

No. C6–84–1078.

Court of Appeals of Minnesota.

March 19, 1985.

Hubert H. Humphrey, III, Atty. Gen., Robert J. Alfton, Minneapolis City Atty., William M. Hansen, Asst. City Atty., Minneapolis, for respondent.

Randall D.B. Tigue, Minneapolis, for appellant.

Heard, considered and decided by LANSING, P.J., FORSBERG and LESLIE, JJ.

## OPINION

LANSING, Judge.

Appellant was charged with misdemeanor prostitution in violation of Minn.Stat. § 609.324, subd. 3(1) (1982). She unsuccessfully moved to dismiss the complaint for lack of probable cause and on the ground that the statute was facially unconstitutional.

The case proceeded to trial, and a jury found appellant guilty. She moved for a new trial, alleging evidentiary error and error in refusing to give a requested jury instruction. The trial court denied the motion, and she appealed. We affirm in part, reverse in part, and remand for a new trial.

## FACTS

On September 8, 1983, Lieutenant Roger Brown, a vice squad officer, went to the Nirvana Club located in Minneapolis, Minnesota, and was met at the door by appellant Yong Cha Ketter. She testified that he requested a $15 massage from her, which he received. He testified that he gave her $25 for a "special massage."

Brown's and Ketter's testimony about the events after the massage strongly diverge. Brown testified that Ketter asked him if he was interested in anything else and how much money he had to spend. He testified that after discussion she agreed to "do everything" if he would spend enough money and then had him move to another room, where she asked him if he wanted to massage her. He said "no" and indicated that he wanted to do "what we discussed upstairs." Brown testified that during the conversation Ketter asked him if he had any condoms with him, and when he said no, she asked him to withdraw prior to ejaculation so she would not get pregnant. Brown said she then attempted to perform oral sex on him, for which he placed her under arrest. He testified that Ketter told him she needed money from prostitution to support her family, which she had brought from Korea.

Ketter testified that after the initial $15 massage, Brown said he wanted more mas-

sage and told her he had $150. She told him she would give a satisfying massage for "whatever [he] can afford to pay" and that Brown then offered her $100. She stated that she took him to a different room and offered him an "exchange massage," in which they would massage each other and she would be topless. She testified that he agreed to the exchange massage and then asked her for oral sex. When she refused, he asked her to have intercourse. She said she refused because she was not taking birth control pills. He then asked her whether she had any condoms. She said no but then asked him whether he had any condoms. She said she sometimes asked customers this question as an excuse "to get away from sex," because customers do not bring condoms. She testified that Brown again asked for oral sex and that she then "grabbed" his penis to make him "come * * * quick" so she could "get away from him." She denied ever telling Brown that she was engaging in prostitution to help her family.

At trial Ketter attempted to introduce expert testimony on the ineffectiveness of withdrawal as a method of birth control and to introduce for purposes of impeachment Brown's prior statements made in connection with investigations of prostitution charges against other individuals. The trial court disallowed the evidence. It admitted evidence indicating that Ketter owned the Nirvana Health Club, which she claims was error, and it refused Ketter's request to instruct the jury on the entrapment defense.

The jury found Ketter guilty as charged, and she was sentenced to 90 days incarceration, stayed for one year on the condition that she engage in no acts of prostitution or indecent conduct.

## ISSUES

1. Is Minn.Stat. § 609.324, subd. 3(1), facially unconstitutional as a violation of the right to privacy?

2. Did the trial court err in refusing to give an entrapment instruction?

3. Did the trial court err in admitting evidence regarding Ketter's ownership and management of the Nirvana Health Club?

4. Did the trial court err in excluding Ketter's expert testimony on the ineffectiveness of withdrawal as a method of birth control?

5. Did the trial court err in refusing to admit evidence of Brown's inconsistent prior statements?

## ANALYSIS

### I

Minn.Stat. § 609.324, subd. 3(1) (1982), prohibits "engag[ing] in prostitution with an individual 18 years of age or above." Prostitution is defined as "engaging or offering or agreeing to engage for hire in sexual penetration or sexual contact." Minn.Stat. § 609.321, subd. 9 (1982). Ketter argues that these statutes violate her basic constitutional right to privacy by making private sexual relations between consenting adults criminal.

The constitutional right to privacy protects a number of fundamental rights, especially in matters of family, sex, and procreation. *See, e.g., Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); *Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). The right of privacy Ketter asserts, however, is broader than that recognized by the Constitution.

As the trial court noted, sexual activity between consenting adults is not always beyond state regulation. The trial court relied on *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973), in which an adult theatre asserted a privacy right to show obscene films to paying adults. The Supreme Court found the idea of a privacy right and a place of public accommodation mutually exclusive. *See id.* at 66–67, 93 S.Ct. at 2639–2640. Ketter argues that a private room in the Nirvana Health Club is not a public place. It is public, however, in the

same sense that the theatre in *Paris Adult Theatre I* is public—it is open to the public for the price of admission.

◼ We also agree with the Iowa Supreme Court's reasoning in *State v. Price*, 237 N.W.2d 813, 818 (Iowa 1976), that prostitution is not identifiable with or reasonably analogous to the kinds of sexual conduct which have been recognized as within the constitutional right of privacy:

> Prostitution implicates more than private sexual relations between consenting adults. It affects others including the community. Although usually transacted in private, it is nevertheless business which is frequently negotiated in public. Although intimate, it is impersonal. Although involving only consenting adults at the time, it may be a factor in the spread of venereal disease or have a close relationship with other criminal activity.

*Id.*

◼ Ketter argues, in addition, that speech does not lose constitutional protection merely because its object is commercial gain; therefore, consensual sexual conduct should similarly not lose protection because it involves payment. The Supreme Court has created protection for commercial speech because it has recognized that society has a "strong interest in the free flow of commercial information." *See Virginia State Board of Pharmacy v. Virginia Citizens Consumer Counsel, Inc.*, 425 U.S. 748, 764, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). Prostitution has not been recognized as having a comparable societal benefit that would warrant constitutional protection, and Ketter has not provided evidence or argument to support a claim for protection.

## II

◼ Ketter alleges that the trial court erred in refusing to give an instruction on entrapment. Minnesota clearly recognizes entrapment as a defense because public policy prevents prosecution in cases where the criminal design originates with the State rather than with the accused. *See*

*State v. Poague*, 245 Minn. 438, 72 N.W.2d 620 (1955). In *Poague* the court stated that entrapment exists when it appears that the police "lured the accused into committing an offense which he otherwise would not have committed and had no intention of committing." *Id.* at 443, 72 N.W.2d at 625. *Accord State v. Grilli*, 304 Minn. 80, 230 N.W.2d 445 (1975). Entrapment is available as a defense to a charge of prostitution. *Cf. State v. Crist*, 281 N.W.2d 657 (Minn.1979) (court determined before trial that defendant charged with prostitution was not entrapped).

◼ The testimony at trial was sharply contradictory. Ketter's testimony is sufficient to support an instruction on entrapment. She maintained that she declined the requests for sexual services and that the sexual contact on which the charge was based was done for the purpose of putting an end to Brown's sexual advances. With such conflicting testimony regarding Ketter's predisposition to commit this crime, it was improper for the trial court to refuse to give the requested entrapment instruction.

◼ Because this was a misdemeanor prosecution, Ketter did not lose the right to assert an entrapment defense by failing to give pretrial notice of her intent to assert the defense. *See* Minn.R.Crim.P. 7.03 (discovery in misdemeanor cases shall be by consent of the parties or by motion to the court); *cf.* Minn.R.Crim.P. 9.02, subd. 1(3)(a) (in felony and gross misdemeanor cases the defendant must disclose defenses, including entrapment).

## III

Ketter claims that the trial court committed reversible error in admitting evidence of her ownership and management of the Nirvana Health Club. She claims that because she was only charged with misdemeanor prostitution under Minn.Stat. § 609.324, the trial court erred in admitting evidence tending to prove she was guilty of felony prostitution under Minn.Stat. § 609.-322 (1982). She cites Minn.R.Evid. 404(b),

which makes evidence of other crimes, wrongs, or acts inadmissible to show a person's character.

■ Although the prohibition in Rule 404(b) encompasses evidence used to prove the character of a person in order to prove actions in conformity therewith, it allows such evidence when used to prove "motive, opportunity, intent, preparation, plan, knowledge * * *." The evidence of her ownership and management of the premises arguably was relevant for those purposes, and thus the trial court did not err in admitting it.

### IV

■ Ketter claims that the trial court erred in excluding expert testimony concerning the ineffectiveness of withdrawal as a method of birth control, arguing that the evidence is relevant to the credibility of Ketter's assertion that she did not offer Brown sexual services. The evidence is relevant under Minnesota's broad definition of relevance. *See* Minn.R.Evid. 401. However, the trial court has broad discretion to exclude evidence when its probative value is substantially outweighed by the possibility that it will confuse the jury or waste time. *See* Minn.R.Evid. 403. This expert testimony has only slight probative value and presents a probability of confusing the jury and wasting time. The trial court was well within its discretion in excluding it.

### V

■ Brown testified at trial that when he investigates prostitution, he never specifically requests sexual services or suggests any particular type of sexual activity. He characterized what he does as a kind of "word game" in which he deliberately avoids asking directly for any kind of sex but tries to get the suspected prostitute to state a price and make the actual offer. Ketter attempted to introduce prior inconsistent statements to impeach Brown on that point. The evidence, two formal complaints from unrelated prostitution cases, was not allowed to go before the jury but

was preserved for the record. Both complaints were written by a police officer who had read Brown's investigative reports. One complaint said that Brown, when asked by a suspected prostitute what he wanted, replied that "in the past, he had asked for [oral sex]." In a similar situation, the other complaint said that Brown had stated to the suspected prostitute that "in the past, he had asked for oral sex."

Under Minn.R.Evid. 613, a prior inconsistent statement is admissible to impeach a witness. Although the complaints based on Brown's past reports are not technically inconsistent with his literal testimony, they are somewhat inconsistent with the assertion that he does not "suggest" sex in investigative situations. Alone, the refusal to admit the impeaching testimony would not constitute reversible error. However, on remand it would be preferable to allow the impeaching testimony for whatever probative value the jury attaches.

### DECISION

Minn.Stat. § 609.324, subd. 3(1), does not violate the constitutional right to privacy.

The trial court erred in refusing to give an entrapment instruction and in refusing to admit for the purposes of impeachment the arresting officer's prior inconsistent statements. The trial court did not err in refusing to admit expert testimony on the ineffectiveness of withdrawal as a method of birth control or in admitting evidence of Ketter's ownership and control of the Nirvana Health Club.

Affirmed in part, reversed in part, and remanded for a new trial.