**STATE of Minnesota, Respondent,**

v.

**Earl MONTPETIT, Appellant.**

**No. C6-89-256.**

Court of Appeals of Minnesota.

Sept. 12, 1989.
Review Denied Oct. 31, 1989.

Hubert H. Humphrey III, Atty. Gen., Tom Foley, Ramsey County Atty., Steven C. DeCoster, Asst. County Atty., St. Paul, Minn., for State.

Earl P. Gray, St. Paul, Minn., for Earl Montpetit.

Heard, considered, and decided by WOZNIAK, C.J., and HUSPENI and RANDALL, JJ.

## OPINION

WOZNIAK, Chief Judge.

Earl Montpetit was convicted of promoting the prostitution of Lisa Roy. On appeal, he argues his conviction was improper because he was a patron of Roy. We disagree and affirm.

## FACTS

On January 7, 1988, Lisa Roy and Ann St. George went to the Oz Nightclub in St. Paul, Minnesota. St. George, a police officer, and Roy, a former prostitute, were posing as prostitutes as part of a vice squad operation. Appellant Earl Montpetit, the owner of the Oz, escorted Roy and St. George to his office for drinks. Montpetit asked them what sexual activities they preferred. St. George replied that she was "versatile" and Roy told Montpetit she preferred performing fellatio. Montpetit informed St. George that he wanted to "date" her and he would arrange a "date" for Roy. Because no backup had been arranged, they declined his offer. Instead, they agreed to return the next evening for "dates." Roy and St. George left shortly thereafter, ostensibly to respond to a beeper call from a customer interested in group sex.

Roy and St. George arrived at the Oz at 9:30 p.m. on the next evening. Both were outfitted with transmission wires so that a surveillance team could monitor their conversations. Montpetit bought drinks for Roy and St. George and gave each of them a rose. Montpetit also introduced them to his friend Aurel Cloutier. While drinking at the bar, Roy told Montpetit she wanted to be rich and famous. Montpetit responded Cloutier would do something about this desire. Roy asked Montpetit how much Cloutier would spend and Montpetit replied "about a half," meaning $50. When Roy inquired where she and Cloutier should go, Montpetit responded that Cloutier knew where to go.

Cloutier and Roy left the Oz about 20 minutes later and drove to an apartment in White Bear Lake, Minnesota. During the drive to the apartment, Roy asked Cloutier how much Montpetit had told him to spend. Cloutier replied that Montpetit said $50 was appropriate. Cloutier also told Roy he wanted a "half and half," meaning fellatio and sexual intercourse.

Cloutier was arrested upon arriving at the apartment in White Bear Lake. Montpetit rented the apartment under the name of "James Webster" and paid the rent by purchasing money orders made out in that name. The apartment contained only liquor, two bathrobes, body paints, and sexually explicit magazines. Cloutier told Roy that he and his friends shared the rent and expenses for this "bachelor crib" apartment.

Montpetit and St. George remained at the Oz after Roy and Cloutier had left. Montpetit asked St. George how long she had been a prostitute, what sexual activities she preferred, and if she liked performing fellatio. Montpetit suggested they have sex in his office or car, but St. George insisted on a bed. Montpetit and St. George therefore drove to the Northernaire Hotel. After Montpetit rented a room, he was arrested. In his possession was a key to the apartment in White Bear Lake.

Montpetit was charged with promoting the prostitution of Roy in violation of Minn. Stat. § 609.322, subd. 3(2) (1986). After a jury trial, Montpetit was found guilty of this offense and subsequently given a three-year stayed sentence. On February 13, 1989, Montpetit appealed his conviction.

## ISSUE

Is one who assists another in obtaining the services of a prostitute a patron of the prostitute?

## ANALYSIS

■ Earl Montpetit was convicted of promoting the prostitution of Lisa Roy in violation of Minn.Stat. § 609.322, subd. 3(2) (1986). Promoting the prostitution of an individual includes knowingly procuring patrons for a prostitute and leasing premises to aid prostitution. Minn.Stat. § 609.321, subd. 7(1) & (2) (1986). Montpetit's arranging Cloutier and Roy's "date" and leasing the "bachelor crib" apartment in White Bear Lake clearly constitute promotion.

■ Patrons, however, cannot be convicted of promoting prostitution. Minn. Stat. § 609.322, subd. 3(2) (1986). A patron is:

> an individual who hires or offers or agrees to hire another individual to engage in sexual penetration or sexual contact.

Minn.Stat. § 609.321, subd. 4 (1986). Montpetit argues that "patron" includes one who hires a prostitute for another person. The trial court rejected this interpretation, but statutory construction is a matter of law which we can address without deference to the trial court. *State v. Ford*, 377 N.W.2d 62, 66 (Minn.Ct.App.1985), *rev'd on other grounds*, 397 N.W.2d 875 (Minn. 1986).

Montpetit contends that, since the statutory definition of "patron" does not specifically limit patrons to one who hires a prostitute for oneself, it includes one who hires a prostitute for another. In interpreting the language of a prostitution statute, however, we must examine the common meaning of the statute's terms. *State v. Poague*, 245 Minn. 438, 440, 72 N.W.2d 620, 623 (1955). The most common meaning of "patron" is a customer or client. Rodale, *The Synonym Finder* 858 (1978); Statsky, *West's Legal Thesaurus/Dictionary* 564 (1985); *Ballantine's Law Dictionary* 924 (3rd ed.1969). Moreover, Minnesota courts have often referred to customers who receive services as "patrons" in other con-

texts. *See, e.g., Yogerst v. Janish*, 303 Minn. 33, 35, 226 N.W.2d 291, 292 (1975) (campsite customers); *Hanson v. Christensen*, 275 Minn. 204, 209, 145 N.W.2d 868, 872 (1966) (resort customers); *Johnson v. Amphitheatre Corp.*, 206 Minn. 282, 285–86, 288 N.W. 386, 387–88 (1939) (roller skating rink customers). We thus conclude that "patron" includes one who hires a prostitute for oneself, but not one who hires a prostitute for another person.

■ Even if Montpetit's preferred interpretation is correct, there was sufficient evidence to prove he was not a patron. In evaluating the sufficiency of the evidence, this court must view the evidence in the light most favorable to the state. *State v. Merrill*, 274 N.W.2d 99, 111 (Minn.1978). Montpetit introduced Roy and Cloutier, as well as suggesting a price. However, during the drive to the "bachelor crib" apartment, Cloutier offered Roy $50 and specified he wanted a "half and half," meaning fellatio and sexual intercourse. The evidence therefore demonstrates that Cloutier himself retained the services of Roy.

■ Montpetit finally asserts that the promotion statute was intended to prohibit commercialized vice, not "fixing up a buddy with a prostitute." Certainly the statutory scheme is meant to deter the parasites who further prostitution for profit. *See* Minn. Stat. § 609.323 (1986); 2 *Wharton's Criminal Law* § 274 (14th ed.1979). However, the prostitution statutes also evince a legislative intent to enact a comprehensive scheme to eradicate furtherance of prostitution, even if it does not rise to the level of commercialized vice. *See* Minn.Stat. §§ 609.321–609.33 (1986). Specifically, there is no requirement of pecuniary benefit under the promotion statute. Minn. Stat. § 609.322 (1986). Therefore, Montpetit's argument that his activities were too innocuous to constitute promotion is not persuasive.

## DECISION

Montpetit was not a patron of Lisa Roy. Under the circumstances, he was appropri-

ately convicted of promoting her prostitution.

Affirmed.