**STATE of Minnesota, Respondent,**

**v.**

**Robert Eugene DUTTON, Appellant.**

**No. C5–89–801.**

Court of Appeals of Minnesota.

Jan. 16, 1990.

Hubert H. Humphrey, III, Atty. Gen., Mary J. Theisen, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Stephen R. O'Brien, Kevin M. O'Brien, Minneapolis, for appellant.

Heard, considered and decided by KLAPHAKE, P.J., and PARKER and FOLEY, JJ.

## OPINION

PARKER, Judge.

Robert Dutton appeals from a judgment of conviction holding him guilty of four counts of psychotherapist-patient criminal sexual conduct.[1] We affirm.

---

1. See *State v. Dutton,* No. C8–89–680 (Minn.Ct. App. July 18, 1989), unpublished opinion, *pet.*

## FACTS

Robert Dutton was the pastor of Bethany Christian Missionary Alliance Church in St. Peter when he was approached in October 1985 by the complainant, J.A.J., and her husband about joining the church and about counseling for her. J.A.J. testified that she informed Dutton she was suffering from low self-esteem, suicidal thoughts, grief, compulsions, an eating disorder and premenstrual syndrome (PMS). She also testified that Dutton's response to being informed of the problems was that if he could not be as much help as a Christian psychologist, he would refer her to one in six weeks.

The focus of the first several sessions was a discussion of scriptures, although other things were discussed. It was painful for J.A.J. to talk about sexual issues. She expressed at the beginning of the sessions that she was not seeking counseling on such matters. Nevertheless, Dutton persisted in discussions about sex, saying that sex was a gift from God and that he was "working" with her on her sexuality. J.A.J. paid Dutton for these sessions initially, until she decided to join his church.

Dutton began suggesting that some of J.A.J.'s problems could be attributable to her husband and that she stop sharing her problems with some of her friends. J.A.J.'s husband and some of her friends felt she was not getting better and urged her to seek other help. In response to a conversation she had with a friend, Dutton told her that terminating the counseling sessions had to be a mutual decision and that it was none of her friend's business.

On the anniversary of her daughter's death, at the end of their session, Dutton gave J.A.J. a hug, which she thought was appropriate but did not want to continue. The following week she asked him if what they were doing was "normal counseling" and he replied that he loved her. The session ended with the two engaged in hugging and passionate kissing.

Two days later J.A.J. went back to clarify that their relationship would remain platonic and asexual. At that meeting the two engaged in hugging and kissing. This was after Dutton had given J.A.J. a rose as a symbol that their relationship would remain "pure and chaste from afar" and that he would "maintain her virginity."

A couple of weeks later, in April 1986, J.A.J. went to Dutton's office one evening and again the following morning. The two engaged in sexual contact, including touching of J.A.J.'s intimate parts. This contact was during her menstrual period. Dutton told her this contact would help her work through negative issues about her menstrual period. For these two encounters, Dutton was convicted of violating Minn. Stat. § 609.345, subds. 1(i) and (j) (1986).

In May 1986 Dutton and J.A.J. went to a Twin Cities motel and engaged in sexual intercourse for the first time. J.A.J. testified that Dutton told her that it was a good sexual encounter because he was unselfish, whereas her husband was selfish.

Soon after, J.A.J. gave Dutton a letter stating, "I, the undersigned, have given Robert E. Dutton control of my life—my future out of my abiding love for him." She also wrote him in another letter that "I've relinquished control to you." Approximately one month after the two first engaged in sexual intercourse and she gave Dutton this note, Dutton told J.A.J. that sex between a counselor and a counselee was a felony in Minnesota.

On August 10, 1986, Dutton invited J.A.J. to his office and they engaged in sexual intercourse. They did so one more time in August. For these acts in August 1986, Dutton was convicted of violating Minn.Stat. § 609.344, subds. 1(i) and (j) (1986).

On September 2, 1986, J.A.J. and Dutton left St. Peter at Dutton's request. She obtained, at his request, $1,000 in traveler's checks and wrote a check for $11,000 to him, again at his insistence. This money was returned to the joint account of J.A.J. and her husband by Dutton's wife.

Dutton implied to J.A.J. that sexual contact and intercourse would be consistent

*for rev. denied* (Minn. Sept. 27, 1989) (sentencing appeal by the state in this case).

with her treatment because it would remove her inhibitions about sex during her menstrual period. J.A.J. testified that Dutton told her the sexual contact on April 26 and 27 could set her free and that he knew she was "hung up" sexually. She viewed this as a demonstration of how his love could free her sexually, after months of counseling during which he assured her that sex was a gift from God in response to her stated desire to be asexual.

The state's expert witness, Dr. Richard Helgeson, a licensed consulting psychologist, testified that J.A.J. had a dependent personality disorder, existing during the time she was seeing Dutton, that made her unable to make everyday decisions by herself without excessive advice and reassurance from others.

Rev. Jeffrey Von Vonderan, a pastoral counselor of Dutton's denomination, and Ellen Luepker, a licensed clinical psychologist specializing in psychotherapeutic abuse, both testified (for the prosecution) that there is a power imbalance in a pastoral counseling setting because the client idealizes the pastor.

### ISSUES

1. Was there sufficient evidence of emotional dependence and therapeutic deception to convict Dutton?

2. Did the trial court err in admitting expert testimony of dependent personality disorder?

3. Did the trial court err in admitting into evidence the $11,000 check?

4. Did the trial court commit prejudicial error in denying Dutton's new-trial motion when he was otherwise able to appeal every issue raised therein?

5. Are Minn.Stat. §§ 609.344, subd. 1(i), and 609.345, subd. 1(i), unconstitutional?

### DISCUSSION

#### I

In reviewing sufficiency of the evidence supporting a jury verdict,

> this court views the evidence in the light most favorable to the jury's verdict, assuming the jury believed the state's witnesses and disbelieved any evidence to the contrary. *State v. Wahlberg,* 296 N.W.2d 408, 411 (Minn.1980). The weight and credibility of the testimony of individual witnesses is for the jury to determine. *State v. Engholm,* 290 N.W.2d 780, 784 (Minn.1980).

*State v. Moore,* 438 N.W.2d 101, 108 (Minn. 1989).

■ A. *Emotional Dependency.* Under subdivision 1(i) of both Minn.Stat. §§ 609.344 and 609.345, the state must prove that Dutton was a clergyman performing or purporting to perform psychotherapy, that J.A.J. was his patient and that she was emotionally dependent on Dutton. The latter is further defined as a situation where the therapist knows the patient is unable to withhold consent to having sexual contact or penetration by the therapist. Minn.Stat. § 609.341, subd. 19 (1986).

The jury was presented with a variety of evidence on this issue, including 32 cards and letters J.A.J. wrote to Dutton. She expressed an unusual degree of emotional dependence arising from a counseling relationship and literally signed over control of her life to Dutton. She violated her strongly held religious beliefs and instincts to engage in what she felt was a very sinful relationship. Her behavior fit the statutory definition of one acting under emotional dependence.

■ B. *Therapeutic Deception.* Under subdivision 1(j) of sections 609.344 and 609.345, the state was required to prove that Dutton, as a psychotherapist, represented to his patient, J.A.J., that sexual contact or penetration was consistent with or part of the ongoing treatment being given.

The jury heard evidence showing that Dutton methodically expanded the relationship into the area of sexuality counseling. Although J.A.J. said at the start that she did not wish to discuss such matters, he persisted. The statute does not require that the therapist's representations that sexual contact is part of treatment be made

on the date of the actual physical contact if the therapist makes such a representation prior to the sexual contact. Dutton's statements about freeing J.A.J. sexually and removing her "block" about her menstrual period occurred prior to the incidents for which he was convicted.

## II

■ Expert testimony is admissible, at the trial court's discretion, if it consists of specialized knowledge that assists the trier of fact to understand evidence or determine a fact in issue. Minn.R.Evid. 702. Such testimony can be opinion on the ultimate issue if helpful to determination of a purely factual issue. Minn.R.Evid. 704 and committee comment.

The supreme court in *State v. Hennum*, 441 N.W.2d 793 (Minn.1989), allowed expert testimony on battered woman syndrome, which it found is beyond the understanding of the average person and "has gained substantial enough scientific acceptance to warrant admissibility." *Id.* at 798–99. The *Hennum* court limited expert testimony to a description of the general syndrome, while disallowing testimony on the ultimate fact (in *that* case) of whether the defendant suffered from the syndrome. *Id.* at 799.

This trial court steered a careful course between imposing unnecessary restrictions on the state's ability to present its case and affording Dutton the protections indicated in *Hennum*. After two omnibus hearings, the trial court determined that the state could present expert testimony on the nature of dependent personality disorder and whether J.A.J. suffered from it; these determinations were viewed as beyond the understanding of the average person. However, the trial court was careful to exclude expert testimony on the question, beyond the limits set in *Hennum*, of whether J.A.J. could withhold consent to sexual contact with Dutton, her therapist.

The trial court has great latitude in deciding whether to admit expert testimony, and the diligence shown in considering the questions was commendable. The decision to admit the expert testimony did not constitute an abuse of discretion.

## III

■ The trial court has broad discretion in relevancy determinations. *State v. Swain*, 269 N.W.2d 707, 714 (Minn.1978). The trial court did not abuse this discretion in admitting into evidence a copy of the $11,000 check J.A.J. gave to Dutton. The check was relevant evidence of the degree of influence he had over her and of her dependence on him.

## IV

■ The trial court held that it did not have jurisdiction to hear Dutton's motion for a new trial because the notice of motion did not specify a hearing date. Since every issue Dutton raised in that motion has been properly raised and considered in this appeal, the refusal to hear the new-trial motion, if error, was not prejudicial.

## V

Dutton claims that he had a right to engage in consensual sexual activity with another adult *in private*, protected by the first amendment of the U.S. Constitution and its parallel provisions.

There is a presumption that the laws passed by our legislature are not intended to violate the federal or state Constitutions. Minn.Stat. §§ 645.17(3) (1988). We also note that it has been recognized in many contexts that private sexual conduct between consenting adults may, constitutionally, be subject to state regulations. *Bowers v. Hardwick*, 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986) (upholding laws prohibiting homosexual sodomy); *State v. Gray*, 413 N.W.2d 107, 114 (Minn.1987) (no fundamental right to engage in sodomous acts in a sex for hire relationship); *State v. Ketter*, 364 N.W.2d 459, 462–63 (Minn.Ct. App.1985) (prostitution).

■ We hold that the right to privacy discussed in the line of cases from *Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972), to *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), does not protect a counselor who engages in sexual activity, albeit private

and "consensual," arising directly out of a religious counseling relationship; this violates the counselor's duty to the patient and may be properly regulated by the police power of the state.

Dutton also argues that the statutes are unconstitutionally vague.

A person whose conduct is clearly proscribed "cannot complain of the vagueness of the law as applied to others." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489 [102 S.Ct. 1186, 71 L.Ed.2d 362] (1982).

*State v. Gerring,* 418 N.W.2d 517, 520 (Minn.Ct.App.1988). Dutton told J.A.J. that their sexual contact constituted a felony. Since he knew his conduct was prohibited by the statute, he should not be heard now to complain that he did not have fair warning of the criminal prohibitions. These statutes are meant to protect vulnerable persons and allow them to reposit trust in those who can help them. The legislature has recognized the emotional devastation that can result when a psychotherapist takes advantage of a patient.

## DECISION

The evidence was sufficient to support Dutton's conviction by the jury under Minn.Stat. §§ 609.344, subds. 1(i) and (j), and 609.345, subds. 1(i) and (j). The trial court did not abuse its discretion in admitting expert testimony on dependent personality disorder or in admitting the $11,000 check. It was not prejudicial error for the court to deny Dutton's new-trial motion. Minn.Stat. §§ 609.344, subd. 1(i), and 609.-345, subd. 1(i), are not unconstitutional.

Affirmed.